UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE CENTRAL PROCESSING SERVICES, L.L.C.** | 2:19-13427 |
| **THE UNITED STATES OF AMERICA**, | |
| Appellant, | HON. TERRENCE G. BERG |
| v. | |
| **CENTRAL PROCESSING SERVICES**, L.L.C, | **ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER** |
| Appellee. | |

In this Chapter 11 bankruptcy case, the United States of America, on behalf of the Internal Revenue Service ("IRS"), a creditor in the case, requested dismissal. The bankruptcy court granted that request. After the case was dismissed, the United States filed a motion to disgorge fees paid to professionals hired by the Debtor to aid it throughout the bankruptcy process. The bankruptcy court denied the motion and the United States appealed.

This order pertains to the first of two appeals from the bankruptcy court case. For the reasons set forth below, the bankruptcy court's order will be affirmed.

1

# BACKGROUND

The following facts are taken from the bankruptcy judge's opinion and are not in dispute. Op., Adv. P. No. 19-43217, ECF No. 153. Central Processing Services, LLC ("CPS") is the debtor in this Chapter 11 case. CPS is in the business of providing printing, mailing, and lockbox services in the fundraising and medical industries. Its customers are primarily charitable organizations. The owners of CPS are Richard T. Cole ("Cole") and Robert W. Burland ("Burland"). *Id.* at PageID.2.

Cole and Burland also own other businesses. One of them, Associated Community Services, Inc. ("ACS"), is in the business of soliciting donations for charitable organizations by direct mail and telephone. ACS previously filed its own Chapter 11 case on March 13, 2014, case number 14-44095 ("ACS Case"). The largest creditor in the ACS Case was the Internal Revenue Service ("IRS"). Early in the ACS Case, the IRS filed a proof of claim for more than $15 million of unpaid withholding and other employment related taxes. ACS objected to the proof of claim. After extensive litigation, ACS and the IRS agreed to an order that allowed the IRS a claim of just under $12 million. As part of the settlement, CPS agreed to guarantee part of ACS's debt to the IRS. *Id.* at PageID.2.

On March 6, 2019, CPS filed this Chapter 11 case. The IRS is by far the largest creditor in the case. CPS's schedules list the IRS as holding a claim of more than $9 million, based on the guaranty. The IRS filed an

2

amended proof of claim in the CPS case on June 25, 2019 in the amount of $6,896,267.83. Much like the ACS Case, the predominant issue in the CPS case was the treatment of the IRS's claim. *Id.* at PageID.2-3.

On June 28, 2019, CPS filed an objection to the IRS's proof of claim. The IRS filed a response, and the bankruptcy court heard the objection on August 16, 2019. On September 5, 2019, the bankruptcy court issued an opinion holding that the IRS's allowed claim was entitled to priority under section 507(a)(8) of the Bankruptcy Code. That meant that, under section 1129(a)(9)(C) of the Bankruptcy Code, the IRS would have to receive the total value of its allowed claim on the effective date of any confirmed plan of reorganization. *Id.* at PageID.3.

While CPS and the IRS litigated over the allowance and priority of the IRS's proof of claim, the IRS was also active in seeking other relief in this case. On August 1, 2019, the IRS filed a motion to dismiss this Chapter 11 case. Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 78 ("Dismissal Motion"). The IRS argued in the Dismissal Motion that there was cause for dismissal under section 1112(b)(1) of the Bankruptcy Code for two reasons. First, cause existed under section 1112(b)(4)(A) because of a substantial, continuing loss to the CPS estate and the absence of any reasonable likelihood of rehabilitation. Second, cause existed under section 1112(b)(4)(I) because CPS failed to timely pay post-petition taxes to the IRS. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.3.

In support of both arguments, the IRS relied on CPS's own information that it provided in the monthly operating reports filed with the bankruptcy court. Citing CPS's monthly operating reports for the months of March through June 2019, the IRS noted that CPS experienced a cumulative loss during that period of $648,684.00. Citing those same operating reports, the IRS next noted that during this period CPS also failed to pay the IRS $121,375.00 of post-petition withheld income taxes, and $42,063.00 of post-petition withheld FICA taxes. *Id.* at PageID.3-4.

Although section 1112(b)(1) authorizes the bankruptcy court to dismiss a Chapter 11 case or convert it to Chapter 7, whichever is in the best interest of creditors, the IRS did not seek conversion, and expressly stated in the dismissal motion that "the United States seeks dismissal, not conversion, of the case." Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 78, PageID.6. Consistent with that request, the proposed order attached to the dismissal motion provided only for dismissal, not conversion, of CPS's case. CPS filed an objection to the dismissal motion, but the only creditors who filed responses all supported it. On August 22, 2019, the Federal Trade Commission ("FTC"), and the states of Idaho, Kansas, Maryland, and Michigan all filed concurrences to the dismissal motion. *Id.* at PageID.4.

The Court scheduled a hearing on the dismissal motion for September 6, 2019. The day before the hearing on the dismissal motion, CPS filed a "modification" to its objection, which stated that CPS

consented to dismissal, so long as the order dismissing the case contained certain provisions regarding professional fee applications, payment of United States Trustee ("UST") fees and closing of the case. *Id.* at PageID.4-5.

At the hearing the following day, CPS confirmed on the record its consent to dismissal. The FTC and the states of Idaho, Kansas, Maryland, and Michigan all stated on the record at the hearing that they also consented to dismissal. In addition, CPS's landlord, HJH Southfield, 2 LLC, although not having filed a response to the Dismissal Motion, stated on the record that it too consented to dismissal, as did the UST. The IRS noted at the hearing that there were no longer any pending objections to the dismissal motion, and that the only issues remaining were "the terms of the dismissal." *Id.* at PageID.5.

The IRS had attached the form of a proposed order to the dismissal motion that succinctly stated only that the dismissal motion is "granted" and that the "bankruptcy case is dismissed for cause, pursuant to 11 U.S.C. § 1112(b)(1)." Despite having submitted such a proposed order, the IRS changed course and indicated at the hearing that it wished to submit a revised proposed dismissal order. The IRS then handed the bankruptcy judge a paper copy of a revised, much longer proposed order with the following new provisions: an injunction barring CPS from filing a bankruptcy case for 180 days; a directive that CPS file all past-due state and federal tax returns within 30 days; an injunction barring any

payments to CPS's professionals, principals and related companies until all post-petition state and federal taxes were paid in full; a directive that CPS file a schedule of all post-petition disbursements made by CPS to its professionals, principals and related companies within 30 days; and a provision for the bankruptcy court to retain jurisdiction "to hear any motions for disgorgement of any disbursements and payments necessary to unwind the bankruptcy, and over any fee applications and objections thereto." The IRS explained that it had not yet circulated a copy of the revised proposed order to CPS, the UST or any other parties, but had copies available to distribute to them at the hearing. *Id.* at PageID.5-6.

CPS, the UST, and all creditors in attendance at the hearing requested that they be given an opportunity to review and approve the form of any revised proposed dismissal order before submission to the bankruptcy court for entry. The court granted the dismissal motion, finding that the IRS had established cause for dismissal under section 1112(b), and finding that the IRS, CPS, the UST and all creditors in attendance at the hearing agreed that the case should be dismissed. *Id.* at PageID.6.

However, the bankruptcy judge explained that he would not try to settle the form of the proposed order on the record at the hearing because CPS, the UST and the creditors at the hearing had not yet seen the draft of the IRS's revised proposed order, with its new provisions. In addition, CPS and the UST both stated that they too had additional terms that

6

they wished to include in the order. The judge therefore instructed the IRS, as the prevailing party, to prepare and circulate to CPS, the UST and the creditors who attended the hearing a draft of a proposed order and seek their approval as to its form. The judge further instructed the IRS that if it was unable to promptly obtain approval by all parties to the form of a dismissal order, then the IRS should use the procedure set forth in the Local Bankruptcy Rules for the presentment of a proposed order. *Id.* at PageID.6-7.

The bankruptcy judge was willing to permit the parties some time following the hearing to agree on the form of an order to memorialize the bankruptcy court's ruling dismissing this Chapter 11 case. However, two weeks went by after the hearing without a proposed order being submitted to the court. *Id.* at PageID.7. Hearing nothing further from the parties, on September 23, 2019, the bankruptcy court entered an order dismissing the case to avoid further delay. Order on Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 127.

The dismissal order states that the dismissal motion is granted and that the Chapter 11 case is dismissed under section 1112(b) of the Bankruptcy Code. The dismissal order grants only the relief requested in the dismissal motion—i.e., dismissal of the Debtor's Chapter 11 case— and contains none of the additional provisions that the IRS described in the draft of the revised proposed order that it handed to the bankruptcy judge at the hearing. The only difference between the dismissal order and

7

the original proposed order that the IRS had attached to the dismissal motion is that the dismissal order requires any fee applications or other requests for relief to be filed no later than October 7, 2019. The bankruptcy court added that deadline to ensure that if there were any further filings by any party in this dismissed case, they be made as soon as possible so that the court could promptly close this case consistent with its ordinary practice. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.7-8.

After the case was dismissed, but within the time set by the court, the IRS filed a motion for an accounting, disgorgement, and other relief. Mot. for Disgorgement, Adv. P. No. 19-43217, ECF No. 135. On October 18, 2019, CPS filed an objection. Obj., Adv. P. No. 19-43217, ECF No. 140. On October 29, 2019, the court held a hearing and took the disgorgement motion under advisement. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.8.

On November 5, 2019, the bankruptcy court issued an opinion and order denying the IRS's motion. Op., Adv. P. No. 19-43217, ECF No. 153; J., ECF No. 154.. The court found that it had jurisdiction over the disgorgement motion because the acts giving rise to the motion occurred while CPS was a debtor. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.13. However, the court declined to exercise its jurisdiction. It found that the request for an accounting was a discovery request and that, because there was no pending matter within the bankruptcy case,

there would be no bankruptcy-law purpose to granting such discovery. Further, although the court agreed that all administrative expense claims were entitled to pro rata treatment, it declined to order such treatment because there had been no distribution of estate property and would be no distribution of estate property because the case had been dismissed and the property had revested. *Id.* at PageID.18-19. This appeal followed.

## STANDARD OF REVIEW

Bankruptcy Rule 8013 provides, in part, that "on an appeal[,] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Fed. R. Bankr. P. 8013.

A district court reviews *de novo* the bankruptcy judge's conclusions of law. *In re Edmonds,* 263 B.R. 828, 829 (E.D. Mich. 2001); *In re Vause,* 886 F.2d 794 (6th Cir.1989).

## DISCUSSION

### A. Statutory Framework

Before beginning the analysis, a brief discussion of the Bankruptcy Code is warranted. Each chapter of the Code has its own sections that govern proceedings under that chapter. 11 U.S.C. § 103. This is a Chapter 11 bankruptcy case, which provides for the reorganization of the debtor's

estate upon confirmation of a plan. 11 U.S.C. § 1101 *et seq*. An unsuccessful Chapter 11 case—meaning, one where a plan for reorganization is never confirmed—can either be dismissed or converted into a Chapter 7 case. 11 U.S.C. § 1112(b)(1); *see Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). Chapter 7 is the part of the Code that provides for liquidation of the estate. 11 U.S.C. § 701 *et seq.*

Both chapters have separate sections explaining how the bankruptcy estate must be distributed upon either liquidation (Chapter 7) or reorganization (Chapter 11). In both of those distribution sections, Chapter 5, section 507, is incorporated by reference. *See* 11 U.S.C. §§ 726, 1129. Section 507 specifies the priority order of claims which are satisfied from the general assets of the debtor's estate. *See Matter of Federal's Inc.*, 553 F.2d 509 (6th Cir. 1997). Section 507 dictates that administrative claims—the kind of claims at issue here—are to be paid second to all other claims, pursuant to section 503(b). *See* 11 U.S.C. §§ 507(a)(2), 503(b).

In Chapter 7 cases, section 507 (and therefore, section 503) is incorporated under section 726, titled "distribution of property of the estate." 11 U.S.C. § 726. Section 726 reads, in pertinent part: "[p]roperty of the estate shall be distributed . . . first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title . . . ." 11 U.S.C. § 726(a)-(a)(1). Thus, with certain exceptions, section 507 governs Chapter 7 distributions.

Similarly, Chapter 11 has its own provision incorporating section 507. 11 U.S.C. § 1129. Section 1129 provides that, "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(A). In other words, the priority structure set forth in section 507 is triggered in Chapter 11 cases on the effective date of the plan for reorganization.

However, not all Chapter 11 cases are successful. Thus, the Bankruptcy Code provides for dismissal under Chapter 11, section 1112. 11 U.S.C. § 1112.

The Bankruptcy Code does not have a section that defines dismissal. Black's Law Dictionary defines "dismiss" as meaning "to send [ ] away; specif., to terminate (an action or claim) without further hearing[.]" Black's Law Dictionary at 482 (7th ed. 1999). The Code does, however, specify the "effect of dismissal" in section 349. That section has two subparts. Section 349(a) describes the effect of dismissal of a bankruptcy case on a later case filed by the same debtor. Section 349(b) describes the effect of dismissal on various actions taken while the case was pending. Section 349(b)(1) reinstates certain proceedings that were superseded by the case, and certain transfers and liens that were avoided. Section 349(b)(2) vacates certain orders and judgments that were entered while the case was pending. Section 349(b)(3) revests the

property of the estate in those entities that owned such property prior to the case being filed. 11 U.S.C. § 349.

Importantly, unlike sections 726 and 1129, section 349 of the Code does not incorporate by reference section 507 or section 503. As the Supreme Court stated in *Russello v. United States,* "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." 464 U.S. 16, 23 (1983) (internal quotations and brackets omitted).

Looking at the purpose behind section 349(b) sheds light on Congress' decision to exclude sections 507 and 503. The legislative notes following section 349(b) provide that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case . . . . Where there is a question over the scope of this subsection, the court will make appropriate orders to protect the rights acquired in reliance on the bankruptcy case." *In re Genovese*, 91 B.R. 831, 834 (Bankr. E.D. Tenn., 1998) (quoting H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 338 (1977); S. Rep. No. 95-989, 95th Cong. 2d Sess. 48- 49 (1978)). Given this background, it makes sense that sections 503 and 507 are not incorporated in section 349; if the purpose of section 349 is to restore the debtor and all others to their pre-petition status, that

12

goal would be difficult to achieve while simultaneously paying out the creditors' claims in order of priority as directed by section 507.

The Code also provides a separate provision regarding professionals' fees in 11 U.S.C. § 330. *See In re 5900 Assocs., Inc.*, 468 F.3d 326, 328 (6th Cir. 2006). Section 330(a)(1)(A) provides that the court may award "reasonable compensation for actual, necessary services rendered by . . . [a] professional person, or attorney and by any paraprofessional person employed by any such person . . . ." In determining reasonable compensation, section 330(a)(3) lists nonexclusive factors for the bankruptcy court to consider: (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. Section 330(a)(4)(A)(ii) provides that the bankruptcy court shall not allow

compensation for services that were not reasonably likely to benefit the estate or necessary to the administration of the case. 11 U.S.C. § 330(a).

## B. Chapter 11 Dismissal

Turning to the merits of this case, the central issue is whether the bankruptcy court erred by declining to exercise jurisdiction to disgorge fees rendered to Debtor's professionals after dismissing this Chapter 11 case. The IRS argues that declining to disgorge the fees was error. It says the bankruptcy court was obligated to disgorge the professionals' fees to ensure that the IRS's administrative claims for taxes owed were paid pro rata with the Debtor's professionals' fees. In support, the IRS says that the claims of the professionals and the post-petition employment taxes owed to the IRS are entitled to the same priority under section 507(a)(2) inasmuch as both classified as administrative claims under section 503(b). As there is nothing that would abrogate that priority order, all the administrative claims should have been paid pro rata.

The IRS is correct that equitable distribution of a debtor's assets is a core goal of the Bankruptcy Code. *See Begier v. I.R.S.*, 496 U.S. 53, 54 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."). The Code is designed to eliminate all special individual priorities and preferences so that creditors may share in the bankrupt estate equally, within their class. *In re Pusey & Jones Corp.*, 192 F. Supp. 233, 235 (D. Del.), *aff'd,* 295 F.2d 479 (3d Cir. 1961). The debtor in a Chapter 11 case is generally required to pay the allowed

amount of such claims in full on the effective date of the plan for reorganization. 11 U.S.C. §§ 507(a)(2), 1129(a)(9)(A). However, as explained fully below, the goal and requirement of pro rata distribution has no applicability to a *dismissed* Chapter 11 case where the estate's assets are never distributed.

Dismissal is but one of the ways a Chapter 11 case may come to an end. The Supreme Court recently addressed the various ways a Chapter 11 case may conclude in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). The first is a bankruptcy-court-confirmed plan. Such a plan may keep the business operating but, at the same time, help creditors by providing for payments, perhaps over time. *See* 11 U.S.C. §§ 1123, 1129, 1141. The second possible outcome is conversion of the case to a Chapter 7 proceeding for liquidation of the business and a distribution of its remaining assets. *See* 11 U.S.C. §§ 1112(a)-(b), 726. A Chapter 7 conversion in effect confesses to an inability to find a workable plan for the Chapter 11 case. The third possible outcome is dismissal. *See* 11 U.S.C. § 1112(b). A dismissal typically "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"—in other words, it aims to return to the financial status quo that existed before the bankruptcy petition was filed. *See* 11 U.S.C. § 349(b)(3); 137 S. Ct at 979 (internal quotations omitted).

*Jevic* recognized a particular form of the dismissal option. Where conditions may have changed in ways that make a perfect restoration of

15

the status quo difficult or impossible, the Code permits the bankruptcy court, "for cause," to alter a Chapter 11 dismissal's ordinary restorative consequences. *Id.* at 976. A dismissal that does so (or which has other special conditions attached) is often referred to as a "structured dismissal," defined by the American Bankruptcy Institute as a "hybrid dismissal and confirmation order . . . that . . . typically dismisses the case while, among other things, approving certain distributions to creditors, granting certain third-party releases, enjoining certain conduct by creditors, and not necessarily vacating orders or unwinding transactions undertaken during the case." *Id.* at 979 (internal citations omitted). As *Jevic* explains, a structured dismissal is not simply a routine dismissal with a few routine extra provisions. Rather, a structured dismissal is a dismissal of a Chapter 11 case that alters a dismissal's ordinary consequences of restoration of the prepetition financial status quo, or which has other special conditions attached. *Id.* at 979.

In *Jevic*, the bankruptcy court was dealing with a structured dismissal. The lower court had approved a structured dismissal order that provided for distributions to creditors which did not follow the Code's list of priorities set forth in section 507. The Supreme Court ruled that even structured dismissals may not circumvent the Code's priority hierarchy when one interested party objects. *Id.* at 983.

Here, the order that is on appeal is a routine—not a structured— dismissal. The order of dismissal contained no list of special conditions.

16

Adv. P., ECF No. 127. Although the IRS proposed attaching such a list to the dismissal order, which if approved would likely have rendered the order a structured dismissal, the IRS's proposed order was never entered because it was not timely submitted to the court. Instead, the bankruptcy court entered its own order containing none of the IRS's proposed conditions.

The bankruptcy court did include a sentence in the dismissal order saying that the parties may file any fee applications or other requests for relief no later than October 7, 2019. *Id.* This is perfectly permissible and hardly a special condition that would render this a structured dismissal. *See Javens v. City of Hazel Park* (*In re Javens*), 107 F.3d 359, 364 n.2 (6th Cir. 1997) ("[D]ismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed[.]"). As a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings" because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings. *Dery v. Cumberland Casualty & Surety Co.* (*In re 5900 Associates, Inc.*), 468 F.3d 326, 330 (6th Cir. 2006). However, the Sixth Circuit expressly found in *In re 5900* that approval of professional fees is not a "related proceeding," but instead "is part of the original proceeding" and dismissal "cannot abrogate the bankruptcy court's statutorily imposed duty [to] review" fee

applications. *Id.* (citations omitted). A bankruptcy court has discretion to consider such matters, and the exercise of such jurisdiction is left to the sound discretion of the trial court. *In re Javens*, 107 F.3d at 364 n.2.

Despite the distinction between *Jevic* and this case, the IRS argues that the bankruptcy court's holding ran contrary to *Jevic*. The IRS argues that bankruptcy courts are prohibited from ordering final distributions that violate the priorities set forth in the Bankruptcy Code when dismissing Chapter 11 cases. According to the IRS, there is no reason to believe this ruling is limited to structured dismissals, and that therefore a bankruptcy court cannot circumvent the priority structure of the Code by refusing to rule.

However, in this case the court did not aim to distribute the estate in *any* order of priority. Accordingly, it could not have "circumvented the priority structure" set forth in the section 507 of the Code. The court simply dismissed the case and retained jurisdiction to review fee applications or other final matters. The only motion the bankruptcy court decided to retain jurisdiction over was the final fee applications submitted by the Debtor's professionals. The final fee applications had no impact on the IRS's right to any of its own claims paid out pro rata. *See In re Westgate Nursing Homes, Inc.*, 518 B.R. 250, 257 (Bankr. W.D.N.Y. 2014) ("Retaining jurisdiction [does] not recreate the bankruptcy estate; rather, it prevent[s] the immediate revesting of the estate, pursuant to

11 U.S.C. § 349(b)(3), for purposes of hearing [the] final fee application.")
(internal citations omitted).

Indeed, the bankruptcy court had a statutory basis entirely separate from section 507 on which to distribute the Debtor's professionals' fees. Payment of professionals' fees is governed by 11 U.S.C. § 330, which states that a professional can be paid on a fairly timely basis, and reasonably expect to be able to retain those fees as long as he or she has not acted in the manner proscribed by section 330. It is significant that there is no reference in this provision to sections 507, 503, 1112, or 726, indicating that the court's ability to review fee petitions is independent of the authority under which it resolves the case. *See In re Unitcast, Inc.*, 214 B.R. 992, 1002 (Bankr. N.D. Ohio 1997), *aff'd*, 219 B.R. 741 (B.A.P. 6th Cir. 1998).

If the IRS wanted a pro rata distribution from the estate, the method to achieve that would have been for the United States to convert the case to a Chapter 7 instead of dismissing it. A Chapter 7 case explicitly provides for liquidation of the estate upon conversion, as is explained fully below.

### C. Chapter 7 Liquidation

As the bankruptcy court pointed out, the IRS would have been entitled to disgorgement in order to receive its fair share of the estate had it converted the case to a Chapter 7 instead of dismissing it. On appeal, the IRS says that the suggestion that the rule requiring disgorgement is

limited to Chapter 7 cases is illogical. By failing to require disgorgement, the IRS argues, the court created a "superpriority" above the hierarchy in section 507 for professionals paid pursuant to the fee application. The IRS argues the Sixth Circuit warned against this "superpriority" in *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir., 2004). While *Specker* pertained to a Chapter 11 case which had been converted to a Chapter 7, the IRS argues that there is no more statutory basis for a superpriority in Chapter 11 than there is in Chapter 7.

What the IRS fails to acknowledge, however, is that the bankruptcy court did not create a superpriority by paying the professionals their fees upon the dismissal of the case. As discussed above, section 507(a), which establishes the priority scheme for estate distribution, is explicitly incorporated into various other sections of the bankruptcy code. In Chapter 7, that section is 726; in Chapter 11, that section is 1129. Here, the bankruptcy court is dealing with neither of those. Rather, the statutory authority for the dismissal is section 1112, which does not incorporate section 507. Nor does section 349 (effect of dismissal) or section 330 (professionals' fees). Accordingly, the priority scheme in section 507 is not triggered in this case. Although *Jevic* held that distribution upon a *structured* dismissal cannot violate section 507, this Court is not dealing with a structured dismissal that seeks to pay out certain creditors.

The cases cited by the IRS do not persuade the court otherwise. None of the cited cases are dismissed Chapter 11 cases. *See In re Barron*, 73 B.R. 812, 813–14 (Bankr. S.D. Cal. 1987) (all administrative expenses incurred under 11 U.S.C. § 503(b) were entitled to equal treatment during ongoing Chapter 11 case); *In re Kaiser Steel Corp.*, 74 B.R. 885, 891 (Bankr. D. Colo. 1987) (where a case is in the early stages, interim payments may be allowed to professionals); *In re World Waste Servs., Inc.*, 345 B.R. 810, 811 (Bankr. E.D. Mich. 2006) (court ordered disgorgement during an ongoing Chapter 11 case where some administrative expenses were paid before Debtor became insolvent).

As the bankruptcy judge succinctly put it:

> "the Disgorgement Motion's request for disgorgement is based on the IRS's contention that all administrative expense claims are entitled to a pro rata share of any distribution of estate property. True enough. But there has been no distribution of estate property, and there will be no distribution of estate property in this dismissed case. The cases cited by the IRS in the Disgorgement Motion in support of disgorgement are inapplicable because they involve pending, not dismissed bankruptcy cases[.]"

Op., Adv. P. No. 19-43217, ECF No. 153, PageID.16.

Moreover, it is ultimately the Debtor's responsibility, not the Debtor's professionals, to pay the post-petition taxes. *See* Op., Adv. P. No. 19-43217, ECF No. 171, PageID.20. The IRS's remedy for Debtor's failure to pay taxes does not lie with the professionals' fees. As the bankruptcy

court stated, although it "in no way condones the Debtor's failure to pay its post-petition taxes and its disregard of its debtor in possession duties . . . the remedy for the Debtor's conduct is not to disallow all of the fees for its professionals if the fees are otherwise compensable, but instead to pursue appropriate remedies against the parties who are responsible for the Debtor's non-payment of taxes." *Id.* at PageID.22. This Court agrees. Accordingly, the IRS is without a remedy under the Bankruptcy Code to collect its administrative claims.

### D. Waiver

Finally, the IRS argues it was error for the bankruptcy court to consider the motion for disgorgement waived because the IRS did not make the motion before dismissal, "to the extent the Bankruptcy Court's opinion is read to suggest" as much. Appellant's Br., ECF No. 11, PageID.831.

This Court does not read the bankruptcy judge's opinion to say that the IRS "waived" its right to ask for disgorgement. Indeed, the bankruptcy judge fully addressed the IRS's motion on the merits, finding it had discretion to exercise its jurisdiction. *See* Op., Adv. P. No. 19-43217, ECF No. 153, PageID.15-16. The court concluded, however, that it would decline to exercise jurisdiction over the motion because it did not provide for any legitimate post-dismissal relief. *Id.* In other words, the IRS did not waive its ability to seek disgorgement, but rather,

disgorgement is not a remedy that is consistent with a dismissed Chapter 11 case.

## CONCLUSION

For the reasons stated above, the bankruptcy court's Order is **AFFIRMED**.

**SO ORDERED.**

Dated: September 18, 2020  s/Terrence G. Berg
           TERRENCE G. BERG
           UNITED STATES DISTRICT JUDGE